## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL DANLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:08-cv-01855-AKK** |
| **CITY OF HUNTSVILLE,** | ) | |
| **HENRY REYES, and REX** | ) | |
| **REYNOLDS,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

### I.  PROCEDURAL HISTORY

Plaintiff Michael Danley ("plaintiff") filed this action against defendants the City of Huntsville ("Huntsville"), Henry Reyes ("Reyes"), and Rex Reynolds ("Reynolds") (collectively, "defendants") on October 7, 2008.  Doc. 1.  Plaintiff alleges discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Fourteenth Amendment.  Defendants moved for summary judgment on all counts.  Doc. 35.  For the reasons set forth below, defendants' motion is granted.

1

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper

"if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a

party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden

of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving

party bears the initial burden of proving the absence of a genuine issue of material

fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to

"go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id*.

at 324 (citation and internal quotation marks omitted).  A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  The court must construe the evidence and all reasonable inferences arising

from it in the light most favorable to the non-moving party.  *Adickes v. S. H. Kress

& Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all

justifiable inferences must be drawn in the non-moving party's favor).  However,

"mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

### III.   FACTUAL BACKGROUND

The facts are presented in the light most favorable to the plaintiff.  Plaintiff is a Caucasian police officer employed by Huntsville.  Doc. 19, Am. Compl. ¶¶ 5,7.  During the relevant time period, Reyes and Reynolds, also Caucasian, were the Chief of Police and Director of Public Safety, respectively.  *Id*. at  ¶¶ 8-9; Doc. 38-6, Woods Aff. ¶ 9.

### A.   *Procedure for Sergeant Promotion*

Huntsville follows specified procedures for filling sergeant vacancies.  First, the Human Resources Department ("Human Resources") creates a list of eligible candidates.  *Id*. at ¶ 2.  To do so, Human Resources posts a job announcement, commonly referred to as a "blue sheet," which details the qualification requirements.  *Id*.  During the 2006 to 2008 period at issue, candidates needed the following qualifications: high school graduate; sixty semester hours or ninety quarter hours of course work at an accredited college or university; five years service as a sworn and bonded police officer, of which the previous eighteen

3

months had to be continuous service with Huntsville; and a score of 70% on a written police supervisor examination. *Id*. at ¶ 3.

Candidates meeting these minimum requirements move into the second phase, in which a third-party consultant company scores them based on a written evaluation and an oral examination of supervisory and leadership abilities. *Id*. at ¶ 4. Human Resources then compiles a list of eligible candidates, ranking them by their following combined scores: written police supervisor examination (20%), written evaluation of supervisory and leadership abilities (40%), and oral examination of supervisory and leadership abilities (40%). *Id*. Applicants are notified only of their own personal combined score. *Id*. at ¶ 5. The list remains in effect for a year, which runs from the date the Chief of Police ("Chief") first requests a short list of eligible candidates. *Id*.

When the Chief notifies Human Resources of a vacancy, Human Resources provides a short list of eligible candidates. *Id*. at ¶ 6. If there is only one vacancy, the Chief receives the names of the three highest-ranking individuals; he receives an additional name for each additional vacancy. *Id*. Human Resources lists the candidates alphabetically and does not provide the Chief with the candidates' numerical rankings. *Id*. However, since the list remains in effect for a year, the Chief and others may deduce the rankings based on which candidates make the

4

short list of three candidates.  Doc. 37-3, Reyes Dep. 31:2-33:6.

The Chief has the sole discretion to select any individual from the short list.
Doc. 38-6, Woods Aff. ¶ 7.  In making his selection, he may review the
candidates' personnel files, consult with their supervisors, and interview them
using questions approved by Huntsville's Equal Employment Officer.  *Id.*

### B.   *June 2007[1] Sergeant Promotion*

The 2006 promotional listing became effective on September 19, 2006.  *Id.*
at ¶ 9.  Based on his test scores, plaintiff determined he ranked third on the listing.
Doc. 38-7, Manning Aff., Ex. F at 15:5-25.  Reynolds, who was Chief at the time,
promoted DeWayne McCarver (Caucasian) on November 6, 2006, and Larry
Childress (Caucasian) on January 15, 2007.  Doc. 38-6, Woods Aff. ¶ 9.  Plaintiff
interviewed for, but did not receive these promotions.  Doc. 38-7, Manning Aff.,
Ex. F at 15:5-25.  Following the promotions, Reynolds called plaintiff, informed
him that he was not selected, but told him that he was "promotable."  Doc. 37-2,
Reyes Dep. 25:20-26:19.

In May 2007, two more sergeant vacancies arose, for which Human

---

[1]Defendants state that this promotion occurred on July 2, 2007, (doc. 36 at 11), and
plaintiff contends it occurred in June 2007.  Doc. 45 at 1.  This dispute is immaterial, but the
court will use the June 2007 date throughout its opinion.

Resources provided Reyes[2] a list of four eligible candidates: plaintiff, Michael

DeNoon ("DeNoon") (Caucasian), Corey Harris ("Harris") (African-American),

and Robert Ramsey ("Ramsey") (African-American). Doc. 38-6, Woods Aff. ¶¶ 9-

10.  Human Resources simply provided additional names from the 2006

promotional listing for these vacancies since it was still in effect.  *Id*. at ¶ 9.

 Of the four candidates, Harris had the most education (a bachelor's degree

and partial completion of a master's); Ramsey had a bachelor's degree; and

plaintiff had three years of college. Doc. 37-3, Reyes Dep. 93:22-94:6; Doc. 38-2,

Reyes Aff., Ex. A.  Ramsey had the most law enforcement experience (eighteen

years), followed by Harris (fourteen years), and then plaintiff (seven years).   Doc.

38-2, Reyes Aff., Ex. A.

 Reyes asked a number of supervisors, including sergeants, lieutenants,

captains, and a deputy chief, for their comments on the candidates, including the

best candidates for promotion.  *Id.* at ¶ 6, Ex. B.  He factored their responses in his

decision.[3]  Doc. 37-3, Reyes. Dep. 105:21-107:23.  Of the four sergeant

candidates, plaintiff received the fewest votes of support (one) compared to fifteen

---

[2]Reyes succeeded Reynolds as Chief in February 2007.  Doc. 38-2, Reyes Aff. ¶ 1.

[3]Plaintiff and defendants hotly contest whether the supervisors' comments were a major or minor factor.  This court discusses the issue at length in its analysis.  *See* Section IV.B.1.c.  A fair reading of the evidence establishes that Reyes considered the comments as at least one factor.

for Harris and fourteen for Ramsey.  Doc. 38-2, Reyes Aff., Ex. A.

Reyes' interview notes reflect that supervisors described plaintiff as a "nice guy, but not sergeant," a "problem," and one with "supervisory issues" and a "do as I say, not as I do" attitude.[4]  Doc. 38-2, Reyes Aff. ¶ 8, Ex. B.

For Ramsey, the supervisors commented: "motivated to do a good job," had "people skills," "well-respected," "very efficient," and "can lead."  *Id*. at ¶ 10, Ex. B.  With respect to Harris, the supervisors described him as:  the "#1 pick," "knowledgeable," "well-respected," "outstanding people skills," "driven," a "leader," the department's "poster child," and an "outstanding officer."  *Id*.

After drafting a chart comparing the candidates' qualifications, Reyes discussed the promotions with Reynolds, who agreed with Reyes' decision to select Ramsey and Harris.  Doc. 38-2, Reyes Aff. ¶ 6, Ex. A; Doc. 37-2, Reynolds Dep. 12:15-15:6.  Reyes awarded the promotions to Harris and Ramsey.  Doc. 38-6, Woods Aff. ¶ 9.

On July 18, 2007, plaintiff filed an internal grievance, alleging: "I have been

---

[4]Plaintiff disputes the accuracy of the statements that he was a "problem," had "supervisory issues," and had a "do as I say, not as I do" attitude.  Doc. 45 at 4.  Plaintiff points out that his November 2006 evaluation, which was conducted by a different supervisor than the ones who made the negative comments, contained only positive statements.  Specifically, his evaluation rated him as "strong" or "outstanding" in all categories, including interpersonal skills.  In the comments section, his reviewer stated that plaintiff "has a good working relationship with his peers" and that he "displays a good attitude."  The evaluation further notes that he "is currently ranked high on the list for possible promotion."  Doc. 46-2, Performance Appraisal.

discriminated against since I am a white male and [those officers receiving promotions] were black males."  Doc. 38-7, Manning Aff, Ex. B.  Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination on August 28, 2007.  Doc. 37-1, Danley Dep., Def. Ex. 3.[5]

## C.    *August 2007 Sergeant Promotion*

In July 2007, another sergeant vacancy arose, and Human Resources forwarded Reyes a list of three names again from the 2006 promotional listing: plaintiff, DeNoon, and Joseph Jenkins ("Jenkins") (Caucasian).  Doc. 38-6, Woods Aff. ¶¶ 9-10.  Reyes solicited comments from Jenkins' supervisors, who described him as an "outstanding leader," a "great leader," a "go-getter," and said that Reyes "could do no wrong with that type of person."[6]  Doc. 37-3, Reyes Dep. 125:20-126:1.

Reyes selected Jenkins for the promotion on August 27, 2008.  Doc. 38-6, Woods Aff. ¶ 9.  Plaintiff then filed a second charge with the EEOC on August 31, 2007, alleging retaliation.  Doc. 37-1, Danley Dep., Def. Ex. 4.

---

[5]In his Amended Complaint, plaintiff indicated that he filed his charge on August 23, 2007.  Doc. 19, Am. Compl. ¶ 10.  The file stamp on the document is illegible.  Plaintiff states in his response to defendants' motion for summary judgment that the date is August 28, 2007.  Doc. 45 at 13.  The court accepts the later date as correct.

[6]Plaintiff disputes the weight that Reyes placed on the comments and whether the comments were the reason Reyes decided to promote Jenkins.  Doc. 45 at 5.

**D.    *February 2008 CRO Assignments***

The Community Relations Officer ("CRO") program exists to establish trust between the community and the police.  Doc. 38-4, Roberts Aff. ¶ 2.  In January 2008, four CRO assignment vacancies arose, and thirty-six officers applied.  *Id*. at ¶ 3.  Deputy Chief Mark Hudson ("Hudson") instructed CRO supervisor Sergeant Mark Roberts ("Roberts") to review the applicants and select five finalists for the four vacancies.  *Id*.; Doc. 38-3, Hudson Aff. ¶ 2.

Roberts assembled a group of three CROs to conduct the interviews with him and asked each applicant six questions pre-approved by Reyes.  Doc. 38-4, Roberts Aff. ¶ 3.  Each interviewer assigned each candidate a grade from one to ten, and the panel recommended the five candidates with the highest combined scores to Hudson.  *Id*. at ¶ 4; Doc. 38-9, Hollingsworth Aff. ¶ 3; Doc. 38-10,  Trussell Aff. ¶ 3; Doc. 38-8, Chappell Aff. ¶ 3.  Of the candidates recommended to Hudson, the highest-scoring candidate received thirty-six points and the lowest-scoring candidate received twenty-nine and a half points.  Doc. 38-4, Roberts Aff. ¶ 4; Doc. 38-9, Hollingsworth Aff. ¶ 3; Doc. 38-10, Trussell Aff. ¶ 3; Doc. 38-8, Chappell Aff. ¶ 3.  Plaintiff scored eighteen.  Doc. 38-4, Roberts Aff. ¶¶ 4-5; Doc. 38-9, Hollingsworth Aff. ¶¶ 3-4; Doc. 38-10, Trussell Aff. ¶¶ 3-4; Doc. 38-8, Chappell Aff. ¶¶ 3-4.

9

The members of the panel, who had no knowledge of plaintiff's EEOC charges, uniformly stated that plaintiff received a low score because he failed to display a high degree of interest in the assignment, gave short, monotone responses, and did not give any examples of community relations skills utilized in his current assignment or appear knowledgeable about CRO duties.  Doc. 38-4, Roberts Aff. ¶¶ 5, 7; Doc. 38-9, Hollingsworth Aff. ¶¶ 4, 6; Doc. 38-10, Trussell Aff. ¶¶ 4, 6; Doc. 38-8, Chappell Aff. ¶¶ 4, 6.

After receiving the list, Hudson asked the department captains to independently rank the thirty-six applicants and provide their personal top five recommendations; the captains recommended the same five candidates proposed by the panel.  Doc. 38-3, Hudson Aff. ¶ 4.  Hudson recommended four of the five candidates to Reyes, who approved Hudson's suggestion without alteration.  *Id*. at ¶ 5; Doc. 38-2, Reyes Aff. ¶ 14.

**E.**    ***STAC Team Assignments in February and July 2008***

The Madison-Morgan County Strategic Counterdrug Team ("STAC") is a multi-jurisdictional law enforcement unit whose officers come from police departments in Huntsville, Decatur, and Madison, as well as federal law enforcement agencies.  Doc. 38-5, Norris Aff. ¶ 2.  The team's primary purpose is to investigate and suppress illegal narcotics activity.  *Id*.

10

In January 2008, two STAC vacancies arose, and Hudson directed Sergeant Gerry Norris ("Norris") to recommend two officers from the fifteen applicants. *Id.* at ¶ 3. To do so, Norris examined the candidates' personnel files, reviewed their drug arrests, and consulted with six other STAC officers. *Id.* at ¶ 4. At a meeting with the other STAC officers, he wrote all the candidates' names on a board and then immediately crossed out two – Kevin Smith ("Smith") and plaintiff. *Id.* Norris explained that STAC officers are on "strict on-call" status and are required to respond within forty-five minutes any time a patrol unit calls STAC to investigate a potential drug offence. *Id.* at ¶ 5. He added that he eliminated Smith and plaintiff because they lived in excess of one hour from certain areas within Huntsville. *Id.* at ¶ 5. Plaintiff admitted that the STAC unit has an on-call and response policy and further admitted that it could take him more than an hour to reach certain parts of Huntsville from his home in Lexington, Alabama. Doc. 45 at 5 (admitting defendants' facts ¶¶ 98-99).

Norris further stated that he and the other STAC officers considered Eddie Houk ("Houk") and Anthony McElyea ("McElyea") to be the top two candidates. Doc. 38-5, Norris Aff. ¶ 7. Houk had experience with Huntsville's Narcotics Investigations Unit and previously served in the United States Secret Service and as a Federal Air Marshal. *Id.* at ¶ 8. McElyea had a demonstrated interest in

11

narcotics interdiction and a strong ability to talk to suspects.  *Id*. at ¶ 9.

Norris, who had no knowledge of plaintiff's EEOC charges, recommended Houk and McElyea to Reyes, who then approved those candidates.  *Id*. at  ¶ 10. When he did not receive the STAC or CRO assignments, plaintiff filed a third EEOC charge on March 4, 2008, again alleging retaliation.  Doc. 19-1, Am. Compl., Ex. 5.

A third STAC vacancy arose in July 2008, for which Norris considered the same list of applicants generated for the January STAC assignments.  Doc. 38-5, Norris Aff. ¶ 11.  Norris again disqualified plaintiff because he still lived in Lexington.  *Id*.  He recommended Chass Shannon ("Shannon") to Reyes based on Shannon's record and interest in working as a full-time narcotics investigator. Additionally, Shannon's stated goal in life was to work highway interdiction with a drug dog as a partner, and the STAC team needed a K-9 officer.  *Id*.  Reyes approved Norris' recommendation.  *Id*. at ¶ 12.  Norris knew about plaintiff's March 2008 EEOC charge, but did not consider it in making his decision.[7]  *Id*.

### F.    *June 2008 Urination Incident*

In June 2008, plaintiff was caught on a security video urinating behind a dumpster, near a Hardee's with bathroom facilities, while on patrol during daylight

---

[7]Plaintiff admits this fact.  *See* Doc. 45 at 5 (admitting ¶ 114 of defendants' facts).

hours.  Doc. 38-2, Reyes Aff. ¶ 11, Ex. E; Doc. 37-1, Danley Dep. 127:13-21.  The video was discussed on Birmingham talk radio shows, broadcast on local television stations, and posted to various internet websites, including YouTube, the Florence Times Daily, and Fox News.  Doc. 37-1, Danley Dep. 143:12-145:5; Doc. 37-2, Reynolds Dep. 72:8-15.

At the time of the incident, plaintiff was taking diuretic medication that caused him to need to urinate with greater urgency.  Doc. 37-1, Danley Dep. 117:9-11, 146:18-23.  Prior to the incident, he did not notify his supervisor that he needed any medical accommodations.  Doc. 38-2, Reyes Aff. ¶ 11.

Plaintiff's immediate supervisor originally proposed a written reprimand as discipline.  Doc. 37-1, Danley Dep. 158:14-17.  However, Reyes reviewed the video and attested that plaintiff's "demeanor and gait did not suggest any sort of emergency."  Doc. 38-2, Reyes Aff. ¶ 11.  Reyes further testified that, in his opinion, plaintiff found the incident funny and did not take it seriously.  *Id*.  Therefore, Reyes decided to suspend him for three days instead.  Doc. 37-3, Reyes Dep. 198:18-19.

**G.**    ***July and September 2008 Sergeant Promotions***

Human Resources administered a new test in 2008, from which they developed a new promotional listing.  Doc. 38-6, Woods Aff. ¶ 11.  Plaintiff had

the overall highest score.  Doc. 37-1, Danley Dep. 162:2-8.

For the July 2008 promotion, Reyes received an eligible candidates list, again without rankings, with the following names: plaintiff, Jeffery Rice ("Rice") (African-American), and Stacey Bates ("Bates") (Caucasian).  Doc. 38-6, Woods Aff. ¶¶ 11-12.  Of the three, Rice had the most experience (thirteen or fourteen years), and Bates had the least experience, with only five years (three in Huntsville and two years elsewhere).  Doc. 37-3, Reyes Dep. 177:9-15, 181:10-12.  Rice's law enforcement experience included special assignments with the STAC team and as a K-9 officer.  *Id*. at 178:21-22.  Rice had the most education (bachelor's and master's degrees), followed by plaintiff (bachelor's degree),[8] and then Bates (associate's degree).  *Id*. at 183:3-184:6.  Reyes testified that the three candidates received similar scores on the annual evaluations, with Rice's being "a little bit better" than plaintiff's.  *Id*. at 184:7-16.  Reyes further testified that he again asked for supervisor input, received no negative comments for Rice and Bates, and received negative comments about the urination incident for plaintiff.[9]  *Id*. at 185:2-187:18.  Reyes selected Rice on July 28, 2008.  Doc. 38-6, Woods Aff. ¶ 12.

---

[8]Plaintiff completed his bachelor's degree after the Harris and Ramsey promotions in June 2007 and prior to his consideration for the July and September 2008 promotions.

[9]Plaintiff disputes this fact on the basis that the supervisors' comments were a minor factor in Reyes' decision.  Doc. 45 at 5-6 (disputing ¶¶ 122-123 of defendants' facts).

For the September 2008 promotion, Reyes received an eligible candidates list with the following names: plaintiff, Bates, and James Giddy (Caucasian).  *Id*. at ¶ 12.  Reyes selected Bates on September 8, 2008.  *Id*.

## H.   *Grievance Proceedings*

On July 27, 2007, the Director of Human Resources denied the grievance plaintiff filed on July 18, 2007, challenging the Harris and Ramsey promotions. Doc. 38-7, Manning Aff., Ex. C.  Plaintiff appealed, and the Personnel Committee held a hearing on January 23, 2008.  *Id*. at Ex. F.  Counsel for plaintiff and for Huntsville presented evidence, called witnesses, and made opening and closing statements.  *Id*.  The Personnel Committee concluded that Reyes did not discriminate against plaintiff when he promoted Harris and Ramsey.  *Id*. at Ex. E. Plaintiff did not appeal the decision to the City Council.  *Id*. at ¶ 8.

## I.   *Statements by City Officials and in The Huntsville Times*

Reynolds had conversations with City Councilman Richard Showers ("Showers") and Commissioner Bob Harrison, both of whom expressed a need for more minority representation in leadership roles within the fire and police departments.  Doc. 37-2, Reynolds Dep. 33:2-35:3.  One such discussion took place at a February 2007 meeting, also attended by Mayor Roy Spencer and City Council President Glen Watson.  *Id*. at 35:4-11.  Additionally, at a work session in

December 2008, Showers expressed his opinion that the departments had missed

opportunities to promote minorities.  *Id*. at 82:3-86:5.

The Huntsville Times covered a promotional ceremony for the police and

fire departments in July 2007.  Doc. 37-3, Reyes Dep., Pl. Ex. 2.  The published

article, entitled "Minorities move up fire, police ladders," stated in relevant part:

> Police officers and Robert Ramsey and Corey Harris, both of
> whom are black, were promoted to sergeant.
> Public Safety Director Rex Reynolds said he has tried to recruit
> more minorities to public safety and promote more minorities into
> management positions.  He said community leaders have been patient
> during those efforts, which Reynolds said are paying off.
> "They are not minority promotions," Reynolds said about
> Thursday's ceremony.  "They are the most qualified for the
> promotions."

*Id*.

## IV.  ANALYSIS

Plaintiff pleads five counts in his Amended Complaint: Count I (race

discrimination – 42 U.S.C. §§ 1981, 1983), Count II (race discrimination – Title

VII), Count III (retaliation – Title VII), Count IV (retaliation – 42 U.S.C. §§ 1981,

1983), and Count V (race discrimination and retaliation – Fourteen Amendment

and 42 U.S.C. §§ 1981, 1983).  Doc. 19, Am. Compl.

**A.      Summary Judgment Is Due on Counts I and IV Because Huntsville Does Not Have a Policy or Custom of Discrimination or Retaliation.**

In Counts I and IV, which are brought pursuant to 42 U.S.C. § 1983, plaintiff alleges that Huntsville unlawfully discriminated and retaliated against him in violation of 42 U.S.C. § 1981.[10]  Doc. 19, Am. Counts I & IV.  Section 1983 applies to municipalities, but municipalities cannot be held liable on a *respondeat superior* theory.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978).  Thus, a municipality is liable under section 1983 only "when execution of a government's policy or custom . . . inflicts the injury."  *Id.* at 694.

Plaintiff asserts that Reynolds' statements to the Huntsville Times regarding attempts to "recruit more minorities to public safety and promote more minorities into management positions" demonstrates a policy or custom of "[f]avoring one racial group for employment over another."  Doc. 45 at 42; Doc. 37-3, Reyes. Dep., Pl. Ex. 2.  This court disagrees.  Not only does the article fail to establish that Huntsville maintained a policy or custom of discrimination or retaliation,[11]

---

[10]Defendants contend that plaintiff also asserts Counts I and IV against Reyes and Reynolds.  Doc. 35 at 4.  The court finds no mention of either in Counts I or IV – both counts are directed solely to Huntsville.  Doc. 19, Am. Compl. ¶¶ 70-73. 82-86.  Furthermore, to the extent that Counts I and IV assert section 1981 claims against Reyes and Reynolds, they are duplicative of Count V and therefore are covered by the court's analysis of Count V.

[11]The article further quoted Reynolds as saying that the promotions were "not minority promotions," but were of "the most qualified."  Doc. 37-3, Reyes Dep., Pl. Ex. 2.  Therefore, it does not support plaintiff's position.  In fact, Reynolds' statements are consistent with Huntsville

17

producing a single newspaper article, without more, is simply insufficient to maintain plaintiff's burden on summary judgment.  *See Weller v. Ransom-Garner*, 338 Fed. Appx. 249, 252-53 (3d Cir. 2009) (newspaper articles on problems with Department of Human Services failed to establish policy or custom of failing to protect foster children); *Allen v. City of New York*, 480 F. Supp. 2d 689, 720 (S.D.N.Y. 2007) (single CNN article on abuse by prison guards insufficient to establish a policy, practice, or custom).  *See also Kivanc v. Ramsey*, 407 F. Supp. 2d 270, 279 n.5 (D.D.C. 2006) ("The Court does not think that newspaper articles alone are sufficient evidence of a municipality's policy or custom."); *Lucas v. City of Ludlow, Ky.*, No. 05-52, 2007 WL 2771153, at *7 (E.D. Ky. Sept. 20, 2007) (general allegations and local newspaper articles "woefully inadequate and utterly insufficient" to carry plaintiff's burden on section 1983 claim on summary judgment).  Therefore, summary judgment is due on Counts I and IV.[12]

_____

policy that it "does not tolerate discrimination or retaliation in employment decisions."  Doc. 38-11, Thomas Aff. ¶ 3, Ex. A.

[12]Defendants acknowledge that, in certain circumstances, "municipal liability may be imposed for a single decision by municipal policymakers."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).  To do so, however, the individual must have "final decisionmaking authority in a particular area."  *Holloman v. Harland*, 370 F.3d 1252, 1291 (11th Cir. 2004). Defendants contend – and plaintiff offered no argument or evidence to the contrary – that Reyes is not a final decision-maker because his promotion decisions are reviewable by Huntsville's Human Resources Director, the Personnel Committee, and the City Council.  Doc. 36 at 59-60 (citing Doc. 38-7, Manning Aff.).  *See also Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994) (noting that "under Alabama law, final policymaking authority rests with the . . . City Council and the Mayor").  Because the record does not support a finding that Reyes and

**B.**   ***Plaintiff Does Not Present Evidence of Material Issues of Disputed Fact Sufficient to Survive Summary Judgment on His Disparate Treatment Claims.***

In Counts II and V, plaintiff alleges that Huntsville discriminated against him in violation of Title VII when the department promoted two African-American candidates, Harris and Ramsey, in June 2007, and alleges that Reyes and Reynolds, acting in their individual capacity, violated the Fourteenth Amendment and 42 U.S.C. § 1981, actionable through 42 U.S.C. § 1983, when they "repeatedly den[ied] him promotion to the position of Sergeant and other job assignments in favor of lesser qualified applicants."  Doc. 19, Am. Compl., Counts II & V, ¶ 89. In addition to challenging the June 2007 sergeant promotion, Count V challenges the Jenkins, Rice, and Shannon promotions, and the STAC and CRO assignments.

Because claims under sections 1981 and 1983 "require the same elements of proof as a Title VII action," the court applies the same analysis to Counts II and V. *Palmer v. Dist. Bd. of Trs. of St. Petersburg Junior Coll.*, 748 F.2d 595, 596 n.2 (11th Cir. 1984).  *See also Adams v. Cobb County Sch. Dist.*, 242 Fed. Appx. 616, 619 n. 5 ("We do not treat [plaintiff's] § 1983 (equal-protection based) failure-to-promote claim . . . separately from his Title VII failure-to-promote claims.").

---

Reynolds are final decision-makers, their decision not to promote plaintiff, without more, does not expose Huntsville to liability under section 1983.

19

Because plaintiff is relying on circumstantial evidence, (*see* doc. 36 at 37; doc. 45 at 18), the court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, plaintiff must first create an inference of discrimination by establishing a *prima facie* case.  *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted).  If plaintiff satisfies his initial burden, "then the defendant must show a legitimate, non-discriminatory reason for its employment action."  *Id.* (citation omitted).  "If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination."  *Id.* (citation omitted).  However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Springer v. Convergys Customer Mgmt Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted).

    1.    *Plaintiff's claims related to the June 2007 sergeant promotion fail.*

        a.    *Plaintiff establishes a prima facie case of discrimination.*

To make out a *prima facie* case on a failure-to-promote case, plaintiff must establish the following elements: (1) membership in a protected class, (2) qualification and application for the position, (3) rejection, and (4) selection of an individual outside of his protected class.  *Id.* at 1348 n.2.  The parties disagree only

as to plaintiff's qualification for the sergeant position.

The court finds that plaintiff can make a *prima facie* case because the evidence establishes that Reyes considered plaintiff qualified for the June 2007 sergeant promotion: "That does not mean that [plaintiff] would not be a good supervisor but at the point I felt that [Harris and Ramsey] would be best for the positions we had available." Doc. 38-7, Manning Aff., Ex. F. at 80:4-7.

> b.    *Defendants articulate legitimate, non-discriminatory reasons for not promoting plaintiff.*

As legitimate, non-discriminatory reasons, defendants proffer two reasons for Reyes' decision not to promote plaintiff: (1) lack of support from supervisors, and (2) negative remarks about plaintiff from supervisors. Doc. 36 at 42. Specifically, defendants note that when Reyes canvassed the supervisors for their opinions as to the top two candidates, fifteen people recommended Harris, fourteen recommended Ramsey, three recommended DeNoon, and only one recommended plaintiff. Doc. 38-2, Reyes Aff. ¶ 7, Ex. A. Additionally, one lieutenant told Reyes that plaintiff was a "problem;" another stated that plaintiff had "supervisory issues;" a third noted that plaintiff had a "do as I say , not as I do" attitude; and a fourth posited that plaintiff was a "nice guy, but not sergeant."[13]   *Id.* at ¶ 7, Ex. B.

---

[13]Plaintiff quarrels with these assessments and contends that they are not true because of his previous performance review.  However, the relevant analysis is not whether the assessments

Defendants have thus satisfied their burden of presenting legitimate, non-

discriminatory reasons.

> c.      *Plaintiff fails to produce evidence sufficient to establish a genuine issue of material fact on pretext.*

Once an employer offers a legitimate, non-discriminatory reason for the

failure to promote, the plaintiff "must meet the reason proffered head on and rebut

it . . . .  If the employer proffers more than one legitimate, nondiscriminatory

reason, the plaintiff must rebut each of the reasons to survive a motion for summary

judgment."  *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir.

2007) (citations omitted).  As the Eleventh Circuit has often emphasized:

> Federal courts 'do not sit as a super-personnel department that
> reexamines an entity's business decisions.  No matter how medieval a
> firm's practices, no matter how high-handed its decisional process, no
> matter how mistaken the firm's managers, [federal law] does not
> interfere.  Rather our inquiry is limited to whether the employer gave
> an honest explanation of its behavior.'

*Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (citing

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).  The court

"must evaluate whether the plaintiff has demonstrated such weaknesses,

---

are true; rather it is whether Reyes had a reasonable basis to believe them.  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (holding that, when colleagues accused plaintiff of sexual harassment, the relevant inquiry is limited to whether the employer honestly believed the accusations, not whether they were actually true).  Since these were reports from supervisors with direct contact with plaintiff, the court finds that Reyes had a reasonable basis to credit them.

22

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder could find

them unworthy of credence." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253,

1258 (11th Cir. 2001) (citations and internal quotation marks omitted).[14]

Plaintiff raises numerous arguments to rebut the two reasons proffered by

defendants – all of which fall short of establishing pretext.  First, with respect to

supervisory input and recommendations, plaintiff argues that there is conflicting

evidence on the weight Reyes gave the supervisors' recommendations and

comments.  Doc. 45 at 26-29.  However, the deposition exchange plaintiff cites,

(doc. 37-3, Reyes Dep. 105:21-107:23),[15] indicates unequivocally that Reyes

considered the candidates' overall qualifications and, within that analysis, placed

some importance on the recommendations and comments received from the

candidates' supervisors.   Notably, the supervisor's comments, including the tally

---

[14]Plaintiff argues that employment discrimination cases involving a pretext inquiry "are only infrequently resolved on summary judgment."  Doc. 45 at 22 (quoting *Strickland v. Prime Care of Dothan*, 108 F. Supp. 2d 1329, 1332 (M.D. Ala. 2000)).  The Eleventh Circuit rejected this presumption in *Chapman*: "The long and short of it is that the summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale."  229 F.3d at 1026.

[15]Reyes cited his reliance on the supervisors' opinions multiple times during his deposition.  *See* Doc. 37-3, Reyes Dep. 41:22 (noting that he talked to candidates' commanders), 87:7-9 (same), 99:11-22 (same), 109:2 (commenting on Ramsey's recommendations from his supervisors), 111:21-112:1 (same), 112:14-15 (commenting on Harris' recommendations from his supervisors), 113:16-22 (same).  *See also* Doc. 38-2, Reyes Aff. ¶¶ 6,10 (discussing importance of supervisors' comments).

of support, appear in Reyes' contemporaneous interview notes and on the matrix he developed to compare the four candidates, clearly establishing that he considered them in making his decision.  Doc. 38-2, Reyes Aff., Exs. A, B.  While plaintiff seeks to create an issue of fact with respect to the weight afforded to these recommendations, there is no evidence in the record that Reyes did not consider the comments or felt that they were unimportant.  Moreover, when pushed in his deposition to assign a specific weight to them, he stated that he looked at the "overall picture of everything, but I would probably put more weight on them than the overall because of the fact they had specific experience with those officers." Doc. 37-3, Reyes Dep. 107:8-12.  Additionally, Reynolds testified that, when Reyes came to him with his recommendations, he reviewed Reyes' matrix and with respect to the supervisors' comments stated: "And this is something I've asked the chief on multiple occasions on various issues is, you know, tell me what your commanders are telling you because we rely heavily on what we receive from those commanders that work closer to those subordinates that we're reviewing for promotion."  Doc. 37-2, Reynolds Dep. 16:11-18.  In other words, there is no material conflict on the weight Reyes gave to the supervisors' opinions.  To the contrary, the evidence presented indicates that the supervisors' opinions were one of the key factors Reyes considered.

24

Critically, however, even if plaintiff is correct that they only played a minor role, his claim still fails.  Plaintiff has offered no evidence that (1) his supervisors did not actually make the negative comments, or (2) that he actually had significantly more support for his candidacy than indicated by Reyes' tally, in which only *one* person recommended him for the promotion.  *See, e.g., Chapman*, 220 F.3d at 1029 (plaintiff's pretext arguments did not address the specific concern raised by employer).  Even assuming, as the court does, that the comments were but one of several factors on which Reyes based his decision, plaintiff failed to establish that Reyes' reliance on them was pretext for unlawful discrimination.

Plaintiff further argues that Reyes' failure to mention his lack of supervisory support during the administrative hearing or to him at the time of the promotion also suggests pretext.  Doc. 45 at 26-29.  First, this argument runs counter to the record.  During the administrative hearing, counsel for Huntsville stated that Reyes "spoke to his commanders and got their opinions on . . . the four candidates."  Doc. 38-7, Manning Aff., Ex. F at 9:3.  Reyes further agreed in his testimony that he spoke to the candidates' commanding officers and "got yet another view."  *Id*. at 69:9-12.  Second, with respect to plaintiff's argument that Reyes should have informed him that his candidacy lacked the support of his supervisors, plaintiff has

offered no evidence that (1) he requested an explanation,[16] (2) he received an

inconsistent explanation, or (3) that it was common for unsuccessful candidates to

receive a specific reason.

Plaintiff next contends that defendants' reasons are pretextual because he

had (1) a higher combined score than Ramsey and Harris, and (2) more awards and

fewer disciplinary actions than Ramsey.  Doc. 45 at 30-33.  As an initial matter, it

is not this court's place to determine which candidate is most qualified.  *Denney v.

City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001) ("We do not ask whether the

employer selected the 'most' qualified candidate, but only whether it selected the

candidate based on an unlawful motive.") (citation omitted)).

With respect to plaintiff's argument that his higher test scores demonstrate

pretext, the Eleventh Circuit considered, and rejected, a nearly identical argument

in *Denney*.  In that case, white firefighters challenged the promotions of minority

applicants who scored lower on a qualification exam.  247 F.3d 1172.  Like here,

the candidates received scores based on a written examination, skills assessment

---

[16]Plaintiff cites to *Mock v. Bell Helicopter Textron, Inc.*, 196 Fed. Appx. 773 (11th Cir. 2006), for the proposition that Reyes' failure to tell plaintiff why he did not receive the promotion is sufficient to establish pretext.  In *Mock*, however, the plaintiff demanded an explanation for his termination, but his employer refused to give him one.  Plaintiff in this case has simply provided no evidence that he ever requested an explanation – much less that one was refused.  *See Smith v. Alltel Commc'ns, Inc.*, No. 8-393, 2009 U.S. Dist. Lexis 109071, at *31 n.17 (M.D. Ala. Nov. 3, 2009) (determining that *Mock* was inapposite because there was no evidence that the defendant refused to provide an explanation to the plaintiff).

test, and interview. *Id*. at 1178. Candidates receiving at least seventy out of one hundred formed the pool of qualified applicants from which the Fire Chief could select a person for promotion, without regard to the applicants' scores. *Id*. The court rejected the plaintiffs' argument that the decision to promote lower-scoring black applicants above higher-scoring white applicants established pretext: "Under the Department's promotion policy, qualification exercise scores mattered only for purposes of determining the pool of qualified candidates. After that, *other* criteria were determinative." *Id.* at 1187 (emphasis in original).

Similarly, in this case, candidates needed certain qualifications, including a 70% on a police supervisor examination, to proceed to the portion of the interview process administered by a third party. Human Resources then ranked the candidates that proceeded to the final stage based on the combined scores of their police supervisor examination, and the oral and written evaluations administered by the third party. As in *Denney*, Reyes received the names of the three top candidates each time a sergeant vacancy arose, listed alphabetically and without their numerical rankings. Reyes was free to select any of the candidates based on his assessment of their suitability for the sergeant position. Thus, *Denney* is dispositive – the rankings here simply established the pool of qualified candidates, and did not prevent Reyes from looking at other factors or qualities when making

27

the final promotion decision.

Next, as to plaintiff's argument that he had a better record with respect to awards and discipline than Ramsey, (doc. 45 at 32-33), his evidence "does not demonstrate that he was so much more qualified than [Ramsey] that a reasonable jury, on this record, could infer discrimination from the mere fact of his non-selection." *Denney*, 247 F.3d at 1188.  Ramsey had a total of six disciplinary actions (including three one-day suspensions), whereas plaintiff had only one.[17] Doc. 37-3, Reyes Dep., Def. Ex. 1.  Reyes testified, however, that Ramsey had *no* disciplinary actions in the five years preceding the promotion decision.  *Id*. at 110:10-14.  Moreover, the number of awards for each candidate was not significantly different: eighteen for Ramsey and twenty for plaintiff.  *Id*. at Def. Ex. 1.  Further, Ramsey had more law enforcement experience (eighteen years versus plaintiff's seven), more education (a bachelor's degree versus plaintiff's three years of college), and slightly higher evaluation scores, (*id*.) – all of which provide "an honest explanation" for Reyes' decision to select Ramsey.  *Chapman*, 229 F.3d at 1030.  Consequently, the differences in Ramsey's and plaintiff's qualifications are not sufficient to establish a material issue of disputed fact or show pretext.  In fact, on this record, it is hard to see how plaintiff can contend that he is more qualified

---

[17]The urination incident occurred after the Ramsey and Harris promotions.

than Ramsey.

Finally, plaintiff seeks to establish pretext by suggesting that the city had an affirmative action plan to promote minorities.  To do that, he points out that, in 2007, certain members of Huntsville's City Council pressured Reynolds and Reyes to promote more African-American officers.[18]  Doc. 45 at 23.  In February 2007, Reynolds held a meeting with Showers, who wanted to discuss minority recruitment and promotion.  Doc. 37-2, Reynolds Dep. 35:4-36:17.  Reynolds asked Mayor Roy Spencer and City Council President Glen Watson to sit in.  *Id.* Reynolds testified that he consistently responded that he was not "going to point and choose minorities to fill positions over other people that were more qualified." *Id.* at 36:1-3.[19]  Plaintiff also points to an article published in The Huntsville Times on police and fire promotions, including the Harris and Ramsey promotions, to show pretext.  Doc. 37-3, Reyes Dep., Pl. Ex. 2.

---

[18]Plaintiff also points to meetings that took place in December 2008 in which Showers expressed his opinion that the fire and police departments had missed opportunities to promote African-Americans. Doc. 37-2, Reynolds Dep. 82:3-86:5.  First, these meetings occurred approximately a year and six months after the promotion and therefore had no bearing on Reyes' decision in June 2007.  Second, Reynolds' testimony does not support plaintiff's arguments – at the December 2008 meetings, Reyes and Reynolds defended decisions *not* to promote black candidates because they considered the white candidates more qualified.

[19]Reynolds also testified that in a work session of the City Council on minority recruitment he told Showers that "he could see, if he would be patient, we had African-Americans and other minorities getting the correct experience, the education and qualifications necessary to be promoted."  Doc. 37-2, Reynolds Dep. 34:2-8.

In *Denney*, the plaintiffs cited to the city's affirmative action as evidence of pretext.  The Eleventh Circuit noted that "[c]ourts have been extremely wary of citing lawful affirmative action plans as evidence of an employer's pretext" and concluded that the city's plan, which expressly stated that selecting officials should make promotion decisions without regard to race, failed to establish pretext.  247 F.3d at 1188 (further noting that there was no evidence that the city considered the city's affirmative action plan in making the challenged promotions).  *Cf. Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095 (11th Cir. 2001) (affirmative action plan indicated pretext when other factors were also present: (1) candidate selected did not meet minimum job qualifications, (2) managers were told that failure to meet affirmative action goals could "affect their future as managers," (3) division chief informed the plaintiff that the county would continue to promote on the basis of color, and (4) hiring process deviated from standard procedure).

This case is more factually similar to *Denney* than *Bass*.  Here,  defendants presented Huntsville Police Department's Written Directive No. 309-2, which states: "Promotional processes will not discriminate based on race, color, creed, religion, national origin, sex, age, political affiliation, marital status or handicap . . . ."  Doc. 38-11, Thomas Aff., Ex. A.  Showers' criticism of the low rate of minority

30

promotions and Reynolds' statements to The Huntsville Times do not establish that

Reyes disregarded the department's equal opportunity policy or unlawfully

considered race in making the promotions.  In fact, Reynolds' statement to the

newspaper stated the opposite, *i.e.* that these were promotions of the most qualified

rather than minority promotions.  Significantly, unlike *Bass*, plaintiff provides no

evidence that Reyes deviated from standard hiring procedures or that Reyes and

Reynolds articulated a decision to promote based on race, regardless of a

candidate's qualifications.

 Because plaintiff fails to establish the existence of a genuine issue of

material fact on any issue, summary judgment is granted for Huntsville on Count II

and for Reyes and Reynolds on Count V, to the extent it alleges discrimination with

respect to June 2007 promotion.[20]

---

 [20]Even if this court ruled otherwise, plaintiff is collaterally estopped from bringing a
section 1983 suit against Reynolds and Reyes for the June 2007 promotion decision.  In
*University of Tennessee v. Elliott*, 478 U.S. 788 (1986), the Supreme Court considered the
preclusive effect of state agency proceedings on 1983 suits, holding that "when a state agency
'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the
parties have had an adequate opportunity to litigate'" then "federal courts must give the agency's
factfinding the same preclusive effect to which it would be entitled in the State's courts."  *Id*. at
799 (citing *Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)).  Under Alabama law,
collateral estoppel, or issue preclusion, applies to issues raised at an administrative proceeding if
the following elements are present "(1) identity of the parties or their privy, (2) identity of the
issues, (3) an adequate opportunity to litigate the issues by the parties in the administrative
proceeding, (4) actual litigation of issues to be estopped, and (5) necessity of the findings on the
issue to be estopped on the administrative decision."  *Rigby v. Marshall*, 134 F. Supp. 2d 1259,
1262 (M.D. Ala. 2000) (citation omitted).  Plaintiff presented his race discrimination claim to the
Personnel Board, challenging the promotions of Ramsey and Harris.  Attorneys for plaintiff and

2.     *Plaintiff waives his arguments on the other promotions.*

Count V also purports to bring a section 1983 claim for race discrimination against Reyes and Reynolds in their individual capacities based on the Jenkins, Rice, and Shannon promotions, and the STAC and CRO assignments.  Plaintiff, however, failed to address any of defendants' arguments with respect to these promotions. "Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards." *Chapman*, 229 F.3d at 1027.  *See also Goldman v. Bracewell & Guiliani, L.L.P.*, 183 Fed. Appx. 873 (11th Cir. 2006) (per curiam) (plaintiff's failure to respond to defendant's arguments on summary judgment constituted wavier); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 & n.6 (11th Cir. 2003) (issue not briefed in response to summary judgment motion deemed abandoned).  Consequently, defendants' motion for summary judgment is granted on Count V with respect to all other promotions or assignments for which racial discrimination is alleged.[21]

----

Huntsville gave opening statements, questioned witnesses, and presented their evidence.  Doc. 38-7, Manning Aff., Ex. F.  Subsequently, the Personnel Board "unanimously conclud[ed] that there was no evidence presented to support [plaintiff's] grievance" or a finding of discrimination. *Id*. at Ex. E.  Thus, *Elliott* requires this court to give preclusive effect to the Personnel Board's factual finding of no discrimination.

[21]In addition, Reyes selected white candidates for some of the assignments and promotions and, therefore, plaintiff cannot make out a *prima facie* case of disparate treatment for

### C.   *Plaintiff Does Not Present Evidence of Material Issues of Disputed Fact Sufficient to Survive Summary Judgment on His Retaliation Claims.*

Count III alleges that Huntsville retaliated against plaintiff in violation of Title VII by denying him the following promotions and job assignments: sergeant positions in August 2007, July 2008, and September 2008; a CRO assignment in February 2008; and STAC assignments in February and July 2008.[22]  Doc. 19, Am. Compl., Count III.  Count V alleges that Reyes and Reynolds retaliated against him in violation of section 1983 with respect to the same promotions and assignments.  *Id*. at Count V.[23]

---

those decisions.  Doc. 36 ¶ 61 (identifying Jenkins as Caucasian); Doc. 36 ¶ 121 (identifying Bates as Caucasian); Doc. 36 at 36 n.4 (identifying the STAC assignees as Caucasian); Doc. 37-3, Reyes Dep. 166:22-167:1 (identifying three of the four CRO assignees as Caucasian).  Finally, as to the only "affirmative action" candidates mentioned in Count V, Rice and one of the CRO assignees, defendants articulated legitimate, non-discriminatory reasons for their selection. *See* Section IV.C.1.b.i-ii below.  These reasons are an "honest explanation," *see Chapman*, 229 F.3d at 1030, and, as such, plaintiff's challenge of these two selection decisions fails.

[22]Defendants allege that plaintiff did not file EEOC charges with respect to the July and September 2008 sergeant promotions or the STAC assignment in July 2008.  Doc. 36 at 47 n.10. *See also* Doc. 19, Am. Compl. ¶¶ 10-16.  "[W]hen a retaliation claim grows out of a properly filed employment discrimination charge . . . it is not necessary for a plaintiff to file a second charge specifically alleging retaliation." *Houston v. Army Fleet Servs., L.L.C.*, 509 F. Supp. 2d 1033, 1043 (M.D. Ala. 2007) (citations omitted).  Therefore, the retaliation claims are properly before the court.

[23]To the extent that plaintiff is pursuing a retaliation claim under the Equal Protection Clause, plaintiff cannot recover from Reyes or Reynolds on that basis. *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340-41 (11th Cir. 1995) (no established right to be free from retaliation exists under the Equal Protection Clause; granting qualified immunity on a section 1983 claim for retaliation based on complaints of gender discrimination). *See also Clark v. Alabama*, 141 Fed. Appx. 777, 789 (11th Cir. 2005) (per curiam) (no clearly established right to be free from retaliation under the Equal Protection Clause). Consequently, the court analyzes the retaliation claims in Count V solely under sections 1981 and 1983.

1.  *Summary judgment is due on the retaliation claims because plaintiff fails to present evidence sufficient to establish a material issue of disputed fact.*

When, as here, the plaintiff seeks to establish his retaliation claims through circumstantial evidence, courts employ the burden-shifting analysis articulated in *McDonnell Douglas*, 411 U.S. 792.[24]  *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993). "To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citation omitted). "After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." *Id.* (citing *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073, 1075 n. 54 (11th Cir.1995)).  "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct."

---

[24]The court applies the same analysis to Counts III and V since retaliation claims under Title VII and section 1983 "generally have the same elements of proof and use the same analytical framework." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). Indeed, the parties adopted this approach in their briefs. *See* Doc 36 at 48 n.11; Doc. 45 at 41.

*Goldsmith*, 513 F.3d at 1277 (citation omitted).

       a.      *Plaintiff establishes a causal relationship between defendants'*
                  *failure to promote him and his protected activity.*

Defendants argue that plaintiff cannot establish a *prima facie* case of

retaliation because there is no causal relationship between his protected activity

and the adverse actions.[25]   The court disagrees.

Plaintiff filed a grievance related to the Harris and Ramsey promotions on

July 18, 2007 and an EEOC charge on August 28, 2007.  Doc. 37-1, Danley Dep.,

Def. Exs. 2-3.  On August 27, 2007, Reyes promoted Jenkins to sergeant from a list

of three candidates, which also included plaintiff and DeNoon.  Doc. 38-6, Wood

Aff. ¶¶ 9-10.  Plaintiff filed a second EEOC charge on August 31, 2007, alleging

retaliation.  Doc. 37-1, Danley Dep., Def. Ex. 4.  The next adverse action occurred

in February 2008 when Reyes did not select plaintiff for the STAC or the CRO

assignments.  Plaintiff then filed his third EEOC charge on March 4, 2008.  Doc.

19-1, Am. Compl., Ex. 5.  The department again passed plaintiff over for

promotions or assignments in July and September 2008.

The court finds that these facts are sufficient to establish a causal link.  The

---

[25]Defendants reiterate their argument that plaintiff did not meet Reyes' subjective requirements for the sergeant positions or special assignments.  Doc. 36 at 49.  However, viewing the evidence most favorably to plaintiff, Reyes considered him qualified for the positions, though perhaps not the *most* qualified.

court notes that the Eleventh Circuit "construe[s] the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Goldsmith*, 513 F.3d at 1278 (citing *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). Moreover, "the opportunities for retaliation do not necessarily immediately present themselves" in a failure-to-promote case. *Mandell v. County of Suffolk*, 316 F.3d 368, 384 (2d Cir. 2003). Furthermore, it makes sense to view plaintiff's seven unsuccessful applications for promotions or assignments – all within an approximately one year period after filing his first grievance – as a potential pattern of retaliation rather than isolated, unrelated events. *See Goldsmith*, 513 F.3d at 1278 (including intervening events in causal relationship analysis); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d. Cir. 1997) ("pattern of antagonism" sufficient to establish link between protected behavior and subsequent discharge).

> b.     *Plaintiff does not present sufficient evidence of pretext to create a material issue of disputed fact.*

To prevail on his retaliation claim, however, plaintiff must establish also that defendants' reasons for his non-selection are pretextual. Here, as legitimate, nondiscriminatory reasons, defendants state that (1) plaintiff lacked supervisory support for his candidacy, (2) plaintiff's involvement in and reaction to the June

2008 urination incident caused Reyes to question his judgment, and (3) Reyes did

not assign him to a CRO or STAC position because the CRO interview panel and

the STAC officers did not recommend him.  Doc. 36 at 51-52.

> ### i.    August 2007 Sergeant Promotion

With respect to Jenkins' promotion, Reyes testified that he considered

Jenkins' evaluations, role as a canine officer, and supervisors' comments, which

were:  "Outstanding leader . . . could do not wrong with that type of person.  He's a

go-getter . . . wants to make sure he does things right so, you know, would be a

great leader."  Doc. 37-3, Reyes Dep. 125:20-126:1.  Plaintiff contends that the

supervisors' comments were a minor factor in the sergeant selection and "adopts

the analysis set forth in the discussion of his discrimination claim."  Doc. 45 at 39.

Even accepting plaintiff's argument as true – that Reyes considered supervisors'

comments as only a minor factor – plaintiff still fails to provide any evidence that

the supervisors did not make the comments or that Reyes did not consider them at

all when making the promotion decision.  In other words, plaintiff fails to "meet the

reason proffered head on and rebut it."  *Crawford*, 482 F.3d at 1308 (citations

omitted).

> ### ii.    February 2008 CRO Assignments

With respect to CRO assignments, Hudson instructed CRO supervisor

Roberts to review the thirty-six applicants and select five finalists for the four vacancies.  Doc. 38-4, Roberts Aff. ¶ 3; Doc. 38-3, Hudson Aff. ¶ 2.  As discussed in the fact section above, plaintiff's score ranked him below the top five.  Doc. 38-4, Roberts Aff. ¶¶ 4-5; Doc. 38-9, Hollingsworth Aff. ¶¶ 3-4; Doc. 38-10, Trussell Aff. ¶¶ 3-4; Doc. 38-8, Chappell Aff. ¶¶ 3-4.  In addition, the panelists were unaware of plaintiff's EEOC charges at the time they made their recommendations.  Doc. 38-4, Roberts Aff. ¶ 7; Doc. 38-9, Hollingsworth Aff. ¶ 6; Doc. 38-10, Trussell Aff. ¶ 6; Doc. 38-8, Chappell Aff. ¶ 6.

Other than arguing that Reyes made the final decision, which this court accepts as true, plaintiff offers no evidence that the reason provided by defendants for his non-selection – that the panel did not score him as highly on the interview  – is pretextual.  Thus, plaintiff fails to meet his burden of proof on retaliation.

iii.     *February and July 2008 STAC Assignments*

In January 2008, two vacancies arose in the STAC unit and Hudson directed Norris to recommend two officers from fifteen applicants.  Doc. 38-5, Norris Aff. ¶ 3.  As discussed in the fact section above, Norris eliminated plaintiff from consideration because he lived in excess of one hour from certain parts of Huntsville, (*id.* at ¶¶ 4-5) a fact plaintiff does not dispute.  Moreover, he admitted also that STAC had a forty-five minute response time requirement.  A third STAC

vacancy arose in July 2008, for which Norris considered the same January 2008 applicants and again disqualified plaintiff because he still lived in Lexington.[26]  *Id.* at ¶ 11.

Again, other than arguing that Reyes made the final decision, which this court accepts as true, plaintiff offers no evidence that defendants' proffered reason – that Norris did not recommend plaintiff due, at least in part, to his home location – is pretextual.  Nor did plaintiff present evidence – or even argue – that Norris considered plaintiff's EEOC charges when making the July 2008 recommendation. Doc. 45 at 5 (admitting defendants' fact ¶ 114).  Thus, plaintiff fails to meet his burden of proof on retaliation.

### iv.   *July and September 2008 Sergeant Promotions*

Plaintiff again applied for sergeant positions in July and September 2008, which he did not receive based on the lack of supervisory support for his candidacy and his involvement in and reaction to the June 2008 urination incident.  Doc. 36 at 51; Doc. 38-2, Reyes Aff. ¶ 11.

Plaintiff responds that these reasons are pretextual because (1) supervisors'

---

[26]Norris provided further reasons why, even if plaintiff lived closer to Huntsville, he found the other candidates more suitable for the STAC positions.  *Id.* at ¶¶ 7-11.  However, in light of plaintiff's failure to respond to the response time reason, it is unnecessary to consider Norris' other explanations.

comments were only a "minor" factor in the promotion decisions, (2) plaintiff

received overly harsh discipline for the urination incident, and (3) Reyes promoted

Ramsey in spite of his disciplinary record.  Doc. 45 at 39-40.  First, even drawing

all inferences in favor of plaintiff, he still fails to demonstrate that Reyes did not

consider the supervisors' opinions, as discussed above.  Second, plaintiff's

argument that he should have received a written reprimand rather than a three-day

suspension for the urination incident does not address whether Reyes considered

the incident in his decision not to promote plaintiff.  *Sridej v. Brown*, No. 09-

12314, 2010 WL 65195, at *2 (11th Cir. Jan. 11, 2010) (per curiam) (affirming

summary judgment, defendant's reasons for not promoting plaintiff, which

included plaintiff's questionable recent on-the-job behavior, was the type of reason

that might motivate a reasonable employer and plaintiff did not present evidence

that the reasons were pretextual).  This court – and more significantly, a reasonable

fact finder – can appreciate why a police department would choose not to promote

an officer caught on videotape urinating in public and who was the butt of ridicule

and outrage locally and nationally.  Third, plaintiff fails to provide any details

about Ramsey's disciplinary actions that would permit this court to determine

whether he was similarly situated to Ramsey and yet was treated differently.

*Foster v. Bd. of Regents of the Univ. Sys. of Ga.*, 342 Fed. Appx. 465, 469 (11th

Cir. 2009) (rejecting plaintiff's argument that his employer's reason for not promoting him – a reprimand in his file – was pretextual because another employee promoted to sergeant also had a disciplinary action in his file).  Moreover, the evidence before this court does suggest at least one important difference: Ramsey's disciplinary actions were over five years old at the time of his promotion, whereas the urination incident occurred less than a month prior to the July 2008 promotion decision.  Thus, plaintiff fails to meet his burden of proof with respect to these two sergeant promotions.[27]

Because plaintiff fails to establish a genuine issue of material fact for trial on pretext, summary judgment is granted for Huntsville on Count III and for Reyes and Reynolds on Count V.

## V.   CONCLUSION

Having determined that there are no genuine issues of disputed fact for trial, the court hereby grants summary judgment in favor of defendants on all counts and

---

[27]In the alternative, defendants argue that they are due summary judgment based on a "mixed-motive" defense.  Doc. 36 at 53; *Pennington*, 261 F.3d at 1269 (holding that the mix-motive defense remains available to defendants in both section 1983 and Title VII cases).  *See also McShane*, 144 Fed. Appx. at 793 n.18.   Because the court determines that plaintiff has not met his burden of establishing that defendants' legitimate, non-discriminatory reasons are pretextual, the court need not consider the applicability of this defense.  Similarly, the court need not address defendants' arguments that Reyes and Reynolds are entitled to qualified immunity or that  Reynolds was not a decision-maker on the promotions and assignments at issue.

dismisses this case with prejudice.

DONE this 30th day of April, 2010.


_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE